UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
                                    )
ALFRED GIANNINI,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   No. 16-cv-12387-DJC
                                    )
TOWN OF ABINGTON and                )
RICHARD GAMBINO,                    )
                                    )
            Defendants.             )
                                    )
                                    )
_____ )
```

## MEMORANDUM AND ORDER

CASPER, J.                                                                June 29, 2018

## I.   Introduction

Plaintiff Alfred Giannini ("Giannini") brings two claims against Defendants Town of Abington ("Abington") and Richard Gambino ("Gambino") (collectively, "Defendants"), relating to the shooting of Giannini on August 21, 2013. D. 1-1. Giannini asserted Count I against Gambino for excessive use of force under 42 U.S.C. § 1983 and Count II against Abington for negligence. D. 1-1. Abington previously moved for summary judgment as to Count II, D. 14, and the Court allowed that motion, D. 18. Defendant Gambino now seeks summary judgment as to the remaining count, Count I, which is asserted only against him, on the grounds that qualified immunity bars the claim against him. D. 25. For the following reasons, the Court DENIES Gambino's motion.

## II. Standard of Review

Summary judgment is granted when there is no genuine dispute as to any material fact and the undisputed facts establish that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A genuine dispute of material fact occurs when the factual evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party carries the burden of establishing the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). If the movant satisfies this burden, the non-moving party may not merely refer to allegations or denials in her pleadings. Anderson, 477 U.S. at 256. Instead, he "must, with respect to each issue on which he would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, [this] requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

The following facts are undisputed unless otherwise noted. On August 21, 2013, Gambino, a sergeant for the town of Abington, learned over the radio that the Brockton Police Department was in search of a reported stolen motor vehicle driven by a suspect in an alleged stabbing incident.

D. 26 ¶ ¶ 1, 2; D. 29 ¶ 1, 2.[1]  Shortly thereafter, Gambino, who was on duty in full uniform and a marked police cruiser, observed the vehicle and identified the driver as Giannini.[2]  D. 26 ¶ 2; D. 29 ¶ 5.  Gambino pursued him until Giannini exited the vehicle and fled on foot.  D. 26 ¶ 3; D. 29 ¶ 6.  Gambino believed Giannini to be armed and dangerous.  D. 26-2 ¶ 63.  Shortly after Giannini fled on foot, Deputy Chief Christopher J. Cutter ("Deputy Cutter") spotted him at an address in Abington.  D. 26 ¶ 8.  According to Deputy Cutter, Giannini appeared from behind a house with no shirt or shoes and walked towards Deputy Cutter.  D. 26 ¶ 8; see D. 29 ¶ 8.  Deputy Cutter ordered Giannini to stop and get on the ground before drawing his firearm.  D. 26 ¶ 9.  When Gambino arrived at the scene a short time later, he found three police officers with firearms drawn on Giannini – Deputy Cutter and Officer Barry A. Geraghty from the Abington Police Department and Trooper Paul Minahan from the Massachusetts State Police.  D. 26 ¶ 12; D. 29 ¶ 9.  According to Gambino, he heard the other officers order Giannini to "[s]how [his] hands, put it down, get on the ground, show [his] hands."  D. 26 ¶ 13.

The parties dispute whether Giannini complied with these commands.  D. 26 ¶ 10; D. 29 ¶ 9.  According to Trooper Minahan, Giannini told the officers that he did not have a gun, but that as he was raising his hand, what Giannini was carrying "looked like a gun."  See D. 29 ¶ 0; D. 29-1 at 11-12.  Giannini testified that he was carrying a stick at the time.  D. 29-2 at 24.  Deputy Cutter testified, however, that after hearing the officers' commands, Giannini continued to hide this object from complete view of the officers by "switching hands behind his back" and walk[ing] closer to the officers.  D. 26-3 ¶ 19.  Deputy Cutter also testified that Giannini instead yelled "I have a gun,"

---

[1] Both parties included their statement of facts within their memoranda of law.  D. 26; 29.  Accordingly, the paragraph numbers refer to the numbered paragraphs of those respective sections in their memoranda.

[2] Giannini testified that he and Gambino grew up together in the same Abington neighborhood.  D. 29-2 at 18.

3

D. 26-3 ¶ 20, and "[i]t's not gonna go this way," D. 26-3 ¶ 24. Gambino, Deputy Cutter and Officer Geraghty testified Giannini concealed the weapon behind him. D. 26-3 ¶ 25; 26-4 ¶¶ 13, 19; see D. 26 ¶ 32.

The details surrounding the discharge of a taser prior to the shooting are also in dispute. See D. 26 ¶ 26; see also D. 29 at 4; D. 29-1 at 13. Gambino testified that he initially discharged his taser once after Giannini ignored the officers' requests to drop the gun. D. 26-2 at 14-16; D. 26 ¶¶ 26-27, 29. According to Gambino, when this attempt proved ineffective, he made an effort to discharge it again, but as he was reloading, Giannini became "agitated and began to close the distance between them." D. 26-2 at 16.

According to Gambino, after his second attempt, he discarded his taser, commanded Giannini to "show his hands," "put down the weapon," "come peacefully and avoid getting hurt." D. 26-2 at 17. On Gambino's account, Giannini took his hand from his right side and brought it forward and it was at this point he saw a wooden object he believed to be the "butt [ ] or the stock end of a rifle." D. 26-2 at 18-19. Gambino testified he felt the "distance closing as [Giannini] walked toward" him and at that point drew his firearm. D. 26-2 at 18-19. Gambino believed Giannini to be "assaultive, at serious bodily harm level, and felt the lethal force was justified" and fired his pistol once hitting Giannini. D. 26-2 at 19. Gambino's shot struck Giannini in the chest. D. 1-1 ¶ 19; D. 26 ¶ 33.

IV.  **Procedural History**

Giannini filed a complaint against Defendants on November 23, 2016. D. 1-1. Abington moved for partial summary judgment of the one count against Abington, Count II for negligence on April 11, 2017. D. 14. On May 5, 2017, the Court allowed this motion. D. 18. Gambino now moves for summary judgment of Count I for excessive use of force. D. 25. The Court heard argument on the motion and took the matter under advisement. D. 38.

4

V.   Discussion

   A.   **Qualified Immunity**

Gambino contends he is entitled to qualified immunity on Count I because "no reasonable police officer would have concluded that shooting the plaintiff after he refused to drop his weapon constituted excessive force." D. 26 at 6.  To determine whether qualified immunity applies, courts must consider "(1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010).  Consideration of the second prong involves a two-step inquiry: "a) the clarity of the law in general at the time of the alleged violation; and (b) the clarity of the law as applied to the case – in other words, whether a reasonable person in the defendant's shoes 'would have understood that his conduct violated the Plaintiff['s] constitutional rights.'" Id. at 36 (quoting Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009)).  Taken together, "these two factors ask whether a reasonable officer, similarly situated, would have believed that his conduct did not violate the Constitution." Lopera v. Town of Coventry, 640 F.3d 388, 396 (1st Cir. 2011).  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine safeguards government officials from civil liability to the extent "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

   1.   *Violation of a Constitutionally Protected Right*

In addressing the first prong of an excessive force claim under § 1983, the key question is "whether the defendant officer employed force that was [objectively] reasonable under the

circumstances." Raiche, 623 F.3d at 36. This inquiry requires 1) weighing the severity of the crime at issue; 2) determining whether the suspect posed an immediate safety risk to the officers or others, and 3) whether the suspect was actively resisting arrest or attempting to flee. Graham v. Connor, 490 U.S. 386, 396 (1989). This evaluation "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). Thus, for purposes of summary judgment, the question turns on "whether all the uncontested facts and any contested facts looked at in plaintiff's favor show a constitutional violation." Buchanan v. Maine, 469 F.3d 158, 168 (1st Cir. 2006).

As to the severity of the crime, it is undisputed that on August 21, 2013, Giannini was a suspect in a theft of a motor vehicle and an alleged stabbing in Brockton that the officers were investigating. D. 26 ¶¶ 1-3; D. 29 ¶¶ 1-2, 5. While the latter of these two crimes is particularly serious as a threat to public safety, this factor alone does not warrant excessive force. See Raiche, 623 F.3d at 36. With respect to the second factor, it is, on the present record, at least disputed that Giannini posed an immediate safety risk to the officers or others to warrant the discharge of a firearm. According at least to Giannini, when Gambino arrived on the scene, he encountered three additional officers with their guns already drawn on Giannini. D. 26 ¶ 12; D. 29 ¶ 8. At least by his account, Giannini had his right hand raised to demonstrate to the officers he did not have a gun, but was instead holding a stick. See D. 29 ¶ 9-10; see also D. 29-1 at 11-12. Giannini also testified he verbally informed the officers on more than one occasion he did not have a gun, see D. 29-2 at 27-28, which Trooper Minahan indicated he did say even if the trooper thought the item in his hand looked like a gun. D. 29-1 at 11-12. With respect to the final factor, whether Giannini was actively resisting arrest or attempting to flee – this too remains disputed. Giannini contends that he complied with the officers' requests to raise his hands, was not moving towards the officers and

informed them he did not have a gun. D. 29 at 27-28; see D. 29-1 at 11-12. Gambino, however, argues that Giannini did not act in accordance with the officers' commands. D. 26 ¶ 21; D. 26-3 ¶ 26; 26-4 ¶ 18. Rather, Gambino contends, Giannini hid his hands behind his back and kept moving closer to the officers. D. 26 ¶ 32; D. 26-3 ¶ 25; 26-4 ¶ 19. In light of these disputed facts, a reasonable factfinder may conclude that Gambino acted unreasonably in shooting Giannini within a very brief period of arriving on the scene and that no objectively reasonable officer would have deemed that Giannini posed an immediate threat justifying his use of force. See McKenney v. Mangino, 873 F.3d 75, 81 (1st Cir. 2017).

   2.   *Clearly Established Right at the Time of the Violation*

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotes omitted). What matters is whether precedent existing at the time of the incident "establish the applicable legal rule with sufficient clarity and specificity to put the official on notice that his contemplated course of conduct will violate that rule." Alfano v. Lynch, 847 F.3d 71, 76 (1st Cir. 2017). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" Saucier, 533 U.S. 194 at 201.

Although he does not dispute that the law is clearly established regarding the excessive use of force, Gambino contends that under the circumstances of this case, no reasonable police officer standing in his shoes would have understood that his conduct violated Giannini's constitutional rights. D. 26 at 6; D. 26 at 12. What a reasonable police officer would have understood turns upon the facts in the particular case, a matter that as discussed above, remains disputed. As disputed, a reasonable jury could accept that a reasonable officer standing in Gambino's shoes would have understood that such conduct violated clearly established law regarding excessive use of force.

7

Accordingly, on this disputed record, this Court cannot grant judgment as a matter of law to Gambino.

VI.   **Conclusion**

For the foregoing reasons, the Court DENIES Gambino's motion for summary judgment, D. 25.


**So Ordered.**

/s/ Denise J. Casper  
United States District Judge